IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 11-CR-20137 Ml/P |
| MARCUS BROOKS, | ) | |
| Defendant. | ) | |

---

### REPORT AND RECOMMENDATION
---

Before the court by order of reference are defendant Marcus Brooks's First and Second Motions to Suppress Evidence, both filed on September 20, 2011. (ECF Nos. 31 & 32.) In his first motion, Brooks challenges the validity of the search warrant executed at his residence on the day of his arrest. In his second motion, he seeks to suppress statements that he made during the course of this search. On December 16, 2011, the United States ("government") filed a response in opposition to both motions.[1] On January 5, 2012, the court held a hearing on the motions. At the hearing, the court heard testimony from Detective Jonathan Overly and Detective James Gaylor of the Memphis Police Department ("MPD"). At the

---

[1] Upon motion by the defendant, the court held in abeyance the motions to suppress until such time that the court decided other motions filed by Brooks. (ECF No. 38.) The government filed its response after the court submitted its report and recommendation denying those motions. (ECF No. 51.)

request of the defendant, the court permitted the parties to submit post-hearing briefs. Brooks subsequently filed his post-hearing brief on January 18 and the government filed its brief on January 26.[2]

Based on the briefs filed in support of and in opposition to the motions, the evidence presented at the hearings, and the applicable law, the court submits the following proposed findings of fact and conclusions of law, and recommends that Brooks's motions to suppress be denied.

### I. PROPOSED FINDINGS OF FACT

The court has carefully considered the testimony of Detective Overly and Detective Gaylor, and finds them to be credible. The court will therefore adopt their version of events as its proposed findings of fact.

On December 20, 2010, Detective Overly received a tip from a confidential informant ("CI") that Brooks was selling marijuana out of his residence at 157 West Person Avenue in Memphis, Tennessee. The CI informed Detective Overly that on December 19, 2010, the CI had been inside the West Person residence and had witnessed Brooks

---

[2]Prior to the January 5 suppression hearing, the court held a hearing on November 21, 2011, in relation to motions filed by Brooks requesting a <u>Franks</u> hearing and seeking disclosure of the identity of the confidential informant relied upon by Detective Overly in obtaining the search warrant. At that hearing, the court received testimony from Detective Overly. Where relevant, the court has considered this earlier testimony in deciding the motions to suppress.

storing and selling marijuana in his living room. The CI also stated that Brooks was confined to a wheelchair. Detective Overly had received tips from this CI on several prior occasions and found the CI to be reliable. Specifically, as stated in Detective Overly's December 22, 2010 affidavit submitted in support of his application for a search warrant, the CI had previously provided information leading to nine convictions of defendants in Shelby County Criminal Court and the seizure of 149.37 grams of crack cocaine, 8.94 grams of powder cocaine, 939.45 grams of marijuana, and $17,591.00 in cash.

After receiving the CI's tip, Detective Overly took steps to confirm that Brooks resided at the West Person residence. On December 21, he reviewed utility records for the residence and learned that Brooks was the account holder. Detective Overly also drove by the residence on December 21 and saw a red Corvette parked in the driveway. He checked the tags on the vehicle and found that it was registered to Brooks. Detective Overly viewed booking photographs of Brooks, which matched the CI's description of Brooks and confirmed the CI's statement that Brooks was confined to a wheelchair. Detective Overly then showed these photographs to the CI, who confirmed that the photographs were of Brooks.[3]

---

[3] While Detective Overly took numerous steps to corroborate the CI's information, the court has only considered the information actually contained in his affidavit in deciding whether the affidavit contains sufficient probable cause.

After confirming Brooks's identity, Detective Overly conducted surveillance of the residence. During a thirty-minute period during the daytime hours of December 21, Detective Overly witnessed three different individuals arrive at the residence on foot, enter the residence, and then leave within one to two minutes. While Detective Overly was not able to see who allowed the individuals into the residence, he did observe Brooks's vehicle in the driveway at the time of these visits. Based on his training and experience, Detective Overly believed these visits were consistent with illegal drug activity. In addition, during the evening of December 21, Detective Overly witnessed Brooks participate in what appeared to be a hand-to-hand transaction directly across the street from the residence. Detective Overly witnessed Brooks's red Corvette facing southbound on Pennsylvania Street across from the residence, while another man, whose black car was positioned next to the Corvette, stood outside Brooks's car window. As Detective Overly drove by the two vehicles, his headlights illuminated both cars. He observed Brooks in the driver's seat of the Corvette participating in a hand-to-hand exchange with the other man. Detective Overly could not see exactly what was exchanged between the two men, but believed their actions were consistent with a drug transaction. On December 22, Detective Overly conducted another drive-by surveillance of the West Person residence and witnessed Brooks coming out of the doorway of the house. On December 22, 2010,

Detective Overly obtained a search warrant for the residence. In support of this warrant, Detective Overly signed an affidavit in which he described the information received from the CI, the CI's past reliability, and some of the detective's observations during his surveillance of the residence.

On December 23, 2010, nine MPD officers, including Detective Gaylor, executed the search warrant at the West Person residence. As the officers approached the residence, Detective Gaylor saw Brooks sitting in his wheelchair near the transparent, wrought-iron front door of the house. One of the officers informed Brooks that they had a search warrant for the residence. Brooks refused to admit the officers. Detective Gaylor witnessed him make a hand signal to someone inside the house. Detective Gaylor testified that, based on his experience, Brooks's hand signal was consistent with a signal to flush narcotics. Approximately thirty seconds after requesting admission into the residence, the officers forced open the front door.

Inside the residence, the officers found Brooks and two other individuals, Julius Dodson and his ten-year-old son. The officers handcuffed Dodson and sat him on a couch in the living room. His son was not handcuffed, but was told to sit next to his father. Brooks was searched and placed in a nearby area in the den, also without handcuffs. Even though Dodson and Brooks were confined to separate sections of the house, they could see and hear each other.

Detective Gaylor testified that once the officers entered the residence, neither Brooks, Dodson, nor his son would have been permitted to leave. Officers began searching the house shortly after they gained entry. At some point early in the search, as officers made their way toward Brooks's bedroom, Brooks stated to the officers that there was some marijuana in his dresser. Officers looked in the dresser and found marijuana, a loaded Smith & Wesson .40 caliber semi-automatic pistol, and $411.00 in cash. Officer Gaylor also discovered a small plastic bag containing crack cocaine and a digital scale under the microwave in the kitchen. During the search, Dodson yelled multiple times at Brooks, "I'm not taking your charge" and "you better take your charge."

After the search was completed and the gun had been found, Officer Gaylor provided Brooks with a Miranda rights waiver form. Prior to that time, Brooks had not been informed of his Miranda rights. Brooks signed the form, but indicated that he did not want to make a statement. However, at some point after signing his Miranda rights waiver form, Brooks stated to the officers that everything in the house was his. This statement was not made in response to any police questioning. Brooks was later indicted on one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

In his first motion to suppress, Brooks argues that the affidavit submitted by Detective Overly to the judicial

commissioner in support of the search warrant was not sufficient to establish probable cause. Brooks further contends that the "good faith" exception does not apply. In his second motion to suppress, Brooks argues that the two statements he made during the search of his residence should be suppressed because they were obtained in violation of his Fifth Amendment rights.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Sufficiency of the Search Warrant Affidavit

The court first addresses Brooks's argument regarding the sufficiency of the affidavit provided by Detective Overly in support of the search warrant issued for Brooks's residence. "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)). To determine if probable cause exists, the task of the issuing judicial officer is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). When the affidavit presented in support of a search warrant is based upon information obtained from a confidential informant, the

court must "consider the informant's veracity, reliability, and 'basis of knowledge.'" United States v. Rodriguez-Suazo, 346 F.3d 637, 646 (6th Cir. 2003) (quoting United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999)); see also Gates, 462 U.S. at 230. "These factors are not evaluated independently; rather, the presence of more of one factor makes the others less important.  For instance, the more reliable the informant, the less detail the informant must provide in his tips before a magistrate can find probable cause." United States v. Ferguson, 252 F. App'x 714, 721 (6th Cir. 2007) (citing Gates, 462 U.S. at 233).

"[T]he magistrate's probable cause determination should be afforded great deference."  Id. at 720 (quoting Rodriguez-Suazo, 346 F.3d at 643) (internal quotation marks omitted).  "This circuit has long held that an issuing magistrate's decision should only be reversed if it was arbitrarily exercised."  Id. (quoting United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)) (internal quotation marks omitted).  "When evaluating the sufficiency of the affidavit under this deferential standard, the affidavit must be considered as a whole; line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions."  Id. (quoting Allen, 211 F.3d at 973) (internal quotation marks omitted).

The sworn affidavit submitted to the judicial commissioner by Detective Overly stated as follows:

Personally appeared before me, Detective J. Overly and made oath that he has good ground and belief, and does believe that a M/B named Marcus Brooks, with a DOB 06/30/1979, TN ID [XXXXXXXX], Shelby County Jail R&I 270670, with a medium complexion, a thin build, approximately 5'10" in height, approximately 140 lbs., who is confined to a wheelchair is in possession of the following described property, to wit: Marijuana, Drug Proceeds, Drug Records, and Drug Paraphernalia contrary to the laws of the State of Tennessee, upon the following described premises, to wit: a single family dwelling house, with a cream colored exterior, with red colored trim, a gray shingled roof, a black wrought iron door facing north, with an address of 157 W. Person Ave., Memphis, TN 38109. The same being located in Shelby County.

Detective Overly is currently assigned to a narcotics investigation team within the Memphis Police Department's Organized Crime Unit. Detective Overly has received specialized education and training from the Memphis Police Department, the Tennessee Bureau of Investigation (TBI) and the Drug Enforcement Administration (DEA) in the investigation and detection of illegal drug activity. Detective Overly has been a police officer since 2003, and he has participated in numerous drug arrests, drug seizures, and drug investigations during his career as a police officer. A copy of the combined Affidavit and Search Warrant has been marked as Exhibit 1 and is attached to this Memorandum.

His reasons for such belief are that the affiant has conducted a drug investigation into the sale of illegal narcotics by the M/B named Marcus Brooks as above described at 157 W. Person Ave. A Memphis, Tennessee Police Department, Confidential Informant (CI) has been to the above described location within the past five (5) days and has observed the M/B named Marcus Brooks selling and storing Marijuana from inside the residence. In the past, the reliable CI has given detectives information regarding illegal drug activity which has been found to be true and correct. The past information given by the CI has led to nine (9) convictions in Shelby County Criminal Court, the seizure of 149.37 grams Crack Cocaine, 8.94 grams Powder Cocaine, 939.45 grams Marijuana, and $17,591 in cash.

Detective Overly has corroborated the information given

by CI. Detective Overly has conducted surveillance on the location within the last five (5) days and has observed Marcus Brooks going to and from the house. Detective Overly has observed Marcus Brooks engaged in a hand to hand transaction in front of the residence. Based off Detective Overly's experience and training as a narcotic's [sic] investigator, the activity which he has observed is indicative of illegal drug activity. These events all occurred in Memphis, Shelby County, Tennessee within the last five (5) days. He therefore asks that a warrant issue to search the persons, outbuildings, vehicles, and premises on said location as above described of the said M/B named Marcus Brooks as above described in said County, where he believes said Marijuana, Drug Proceeds, Drug Records, and Drug Paraphernalia are now possessed, contrary to the Laws of the State of Tennessee.

(Ex. 1 to Jan. 5, 2012 hearing.)

The court finds that, after considering the totality of the information contained within Detective Overly's affidavit, the judicial commissioner had a substantial basis to find that the affidavit established probable cause to believe that evidence of illegal drug trafficking would be found inside Brooks's residence. In regard to the CI's veracity and reliability, Detective Overly attested in his affidavit that the CI had given detectives information regarding illegal drug activity in the past that was found to be true and correct. He also stated that the CI's information regarding other individuals' illegal drug activity has resulted in nine convictions and the seizure of large quantities of crack cocaine, powder cocaine, marijuana, and cash. In regard to the CI's basis of knowledge, Detective Overly stated in his affidavit that the CI had been inside Brooks's residence within the

-10-

past five days and saw Brooks selling and storing marijuana inside the residence. In addition, Detective Overly included in the affidavit information regarding his independent investigation to corroborate the CI's information. He stated that within the past five days, he observed Brooks going to and from the residence and he witnessed Brooks participate in what appeared to be a hand-to-hand drug transaction in front of the residence. Based on the reliable information provided by the CI and Detective Overly's independent investigation, the affidavit established probable cause to support the issuance of the search warrant.

Brooks relies heavily on United States v. Weaver, 99 F.3d 1372 (6th Cir. 1998), a case in which the Sixth Circuit found that an affidavit lacked sufficient probable cause to support the search warrant issued for the defendant's residence. However, Weaver is distinguishable from the present case. In Weaver, the affidavit was composed largely of "boilerplate text" and stated that the informant had observed the defendant "having personal possession and control over a quantity of marijuana being held expressly for the purpose of unlawful distribution." Id. at 1375-76. The affidavit did not include any underlying factual information to support the informant's knowledge regarding distribution or the officer-affiant's belief that the marijuana was going to be distributed. Id. at 1378. The court also stated that "[t]here is no indication in this affidavit that this informant provided

reliable information in the past leading to drug-related arrests or prosecutions" and the officer-affiant "undertook no substantive independent investigative actions to corroborate his informant's claims, such as surveillance of the Weaver residence for undue traffic or a second controlled purchase made with officers viewing." Id. at 1379. Unlike in Weaver, Detective Overly attested in his affidavit that the CI was inside Brooks's residence and observed marijuana sold and stored inside the residence, the CI provided reliable information in the past leading to nine convictions and the seizure of large quantities of drugs and cash, and Detective Overly conducted his own surveillance and saw Brooks going to and from the residence and witnessed Brooks participate in what appeared to be a hand-to-hand drug transaction in front of the residence.

The court finds that Detective Overly's affidavit is more akin to the one deemed sufficient in United States v. Ferguson. In that case, the officer received a tip from a reliable confidential informant who had previously provided information leading to five felony convictions of drug traffickers, five seizures of cocaine, and one seizure of marijuana. Ferguson, 252 F. App'x at 715. Along with a description of the defendant and his residence, the informant told the officer that he had witnessed the defendant sell cocaine from the defendant's residence within the last five days. Id. at 716. The officer corroborated only the identity, residence,

and prior felony conviction of the defendant, but did not conduct any independent surveillance. Id. The Sixth Circuit found the affidavit submitted in support of the search warrant established sufficient probable cause. Id. at 721. The court stated that "the officer attested to the confidential informant's prior successful assistance five previous times and also discussed his own efforts at corroborating elements of the confidential informant's tip. These two factors combine to provide a substantial basis for the issuing chancellor's probable-cause determination." Id. at 721. The court also noted that because the informant had provided a significant level of prior and accurate assistance in the past, it was not "concern[ed] that Officer Harrison corroborated only innocent facts." Id. at 721 n.4.

Similar to the officer in Ferguson, Detective Overly relied upon an informant who had proven reliable in the past and whose information resulted in numerous drug convictions and drug seizures. In fact, Detective Overly went further than the officer in Ferguson, in that he corroborated more than just innocent facts; he witnessed Brooks conduct what appeared to be a hand-to-hand drug transaction in front of his residence. Moreover, the fact that the CI did not provide the specific dates of sales, the names of buyers, or other details is not "fatal to the [judicial commissioner's] finding of probable cause." Id. at 722. For these reasons, the court finds that the issuing judicial commissioner had

a substantial basis to conclude that there was probable cause to believe that a search of Brooks's residence would yield evidence of illegal drug trafficking.[4]

**B. Brooks's Statements**

The court next addresses Brooks's argument regarding the suppression of his statements made during the search of his residence. In <u>Mirada v. Arizona</u>, 440 U.S. 934 (1966), the Supreme Court outlined various protections that must be provided to a suspect by law enforcement once that suspect is taken into custody and interrogated. The safeguards provided for by <u>Miranda</u>:

> come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the <u>Miranda</u> safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

---

[4]Based on this conclusion, the court need not address whether the good faith exception should apply. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897 (1984).

-14-

Rhode Island v. Innis, 446 U.S. 291 (1980) (emphasis in original); see also Shaneberger v. Jones, 615 F.3d 448, 453 (6th Cir. 2010); United States v. Thomas, 381 F. App'x 495, 501-02 (6th Cir. 2010). "On the other hand '[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.'" Thomas, 381 F. App'x at 502 (quoting Innis, 446 U.S. at 299-300).

In the case at bar, Detective Gaylor testified credibly that none of Brooks's statements during the search of his residence were made in response to any police questioning. Nor has Brooks presented any evidence that the officers engaged in conduct that "they should have known were reasonably likely to elicit an incriminating response." Both of Brooks's statements were made spontaneously and voluntarily. If anything, Brooks's statements were provoked by Dodson's repeated statements that he did not want to take Brooks's "charge." Thus, regardless of whether Brooks was in custody at the time he made his statements, these statements were not made in response to any interrogation by the officers. The court finds that Brooks's statements were not obtained in violation of Miranda.

### III. RECOMMENDATION

For the reasons above, it is recommended that Brooks's First and Second Motions to Suppress Evidence be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 28, 2012
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**